UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>v.<br><br>JOHN PAUL ROSAS (4),<br><br>           Defendant. | Case No. 17cr3431-MMA-4<br><br>**MEMORANDUM DECISION RE: DEFENDANT'S UNOPPOSED MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**<br><br>[Doc. No. 149] |

  On April 26, 2018, Defendant John Paul Rosas pleaded guilty to Count One of an Indictment charging him with conspiracy to distribute various controlled substances, in violation of Title 21, United States Code, sections 841(a)(1) and 846. *See* Doc. No. 64. On July 23, 2018, the Court sentenced Defendant to a mandatory minimum custodial term of 120 months, to be followed by five years of supervised release. *See* Doc. No. 90. Defendant is currently serving his custodial term at Federal Correctional Institute ("FCI")

1

Terminal Island in Los Angeles County, California. According to the Bureau of Prisons, Defendant's anticipated release date is April 14, 2027.[1]

Defendant, proceeding through counsel, now moves the Court for early compassionate release and a corresponding reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. *See* Doc. No. 149. The government has filed a response to Defendant's motion indicating no opposition to Defendant's requested reduction in sentence. *See* Doc. No. 157. The Court finds the matter suitable for disposition on the current record and without a hearing. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## DISCUSSION

Defendant seeks early compassionate release due to the spread of the novel coronavirus disease, COVID-19, throughout the federal prison system. Defendant asserts that he is particularly at risk due to several chronic medical conditions, to wit, hypertension, heart disease, diabetes, Hyperlipidemia, and morbid obesity, and the prevalence of the virus within the facility where he is currently housed. The government agrees that Defendant's health conditions place him at a sufficiently elevated risk to warrant early release, subject to a lengthy period of home confinement upon release.

*1. Relevant Law*

In 1984, Congress authorized compassionate release from prison under the criteria set forth in 18 U.S.C. § 3582(c)(1)(A) as part of the Comprehensive Crime Control Act. Under its original terms, only the Director of the Bureau of Prisons was authorized to file a motion for compassionate release pursuant to section 3582(c)(1)(A). The First Step Act went into effect on December 21, 2018. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Section 603(b) of the First Step Act modified section 3582(c)(1)(A), which now provides, in pertinent part:

---

[1] *See* Federal Bureau of Prisons Online Inmate Locator, available at https://www.bop.gov/inmateloc (last visited 12/7/2020).

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The United States Sentencing Commission has published a policy statement addressing the standards for compassionate release.[2] *See* U.S.S.G. § 1B1.13. The statement reiterates that a court may reduce a term of imprisonment under § 3582(c)(1)(A) if "extraordinary and compelling reasons warrant the reduction" and "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable." *Id*. The policy statement also directs courts to determine that "the defendant is not a danger to the safety of any other person or to the community," before reducing a term of imprisonment under § 3582(c)(1)(A). *Id*.

---

[2] The Court agrees with other district courts that while the text of section 603(b) of the First Step Act supersedes and contradicts certain aspects of the policy statement's text, in the absence of further guidance from the appellate courts or further action by Congress, trial courts should not consider themselves relieved of their duty to "continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release under § 3582(c)(1)." *United States v. Lum*, No. 18-CR-00073-DKW, 2020 WL 3472908, at *4 (D. Haw. June 25, 2020) (collecting cases); *But cf. Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

### *2. Analysis*

As a threshold matter, the Court finds that Defendant has exhausted his administrative remedies. Defendant first presented his request for early release to the Bureau of Prisons on June 3, 2020, citing his health concerns; the request was denied by the warden the following day. *See* Def. Ex. A. Defendant bases the instant motion on identical concerns and the government agrees that he has effectively exhausted his administrative remedies. Accordingly, he has exhausted his administrative remedies and the Court will consider his motion on its merits.

### a) Extraordinary and Compelling Reasons

Defendant argues that "extraordinary and compelling reasons" support his request for early compassionate release and a corresponding reduction in sentence. Defendant points to the spread of COVID-19 throughout the facility where he is currently housed. Defendant contends that the prevalence of the virus in the facility, in combination with his serious medical conditions, constitutes extraordinary and compelling reasons supporting early release and a corresponding reduction in his custodial term.

With respect to his current place of confinement, Defendant is currently housed at FCI Terminal Island, a low-security institution with approximately 752 inmates living in close-quarters, dorm-like housing. According to the Bureau of Prisons' most recent data, it appears that, to date, more than 560 inmates and 26 staff members have become infected with COVID-19 and ten inmates have died as a result of contracting the virus.[3] As Defendant notes, the troubles at the facility have been well-documented. And while the Court acknowledges and appreciates the extraordinary measures taken by the Bureau of Prisons to attempt to ensure the health of federal inmates throughout the country, the

---

[3] *See* https://www.bop.gov/coronavirus/ (last visited 12/7/2020).

Centers for Disease Control and Prevention ("CDC") has nevertheless concluded that COVID-19 poses a heightened risk to the nation's incarcerated population.[4]

With respect to his specific health concerns, Defendant has submitted medical records chronicling that he suffers from, and receives treatment for, hypertension, arrhythmias and congestive heart failure, insulin-requiring diabetes mellitus, and obesity. *See* Def. SEALED Ex. H.  Defendant also proffers a supporting declaration from a medical professional who has reviewed Defendant's medical records and agrees that he is at a concerningly elevated risk for serious illness and death if infected with the novel coronavirus.  *See* Def. Ex. G. Dr. Yves Nepomuceno states that "[s]hould Mr. Rosas become infected with COVID-19, he can develop high fevers, pneumonia, acute respiratory distress syndrome, arrhythmias, acute cardiac injury, shock, pulmonary embolism, and a stroke.  All of these complications can lead to death." *Id*. ¶ 3. Additionally, the CDC has recognized that individuals who suffer from certain chronic conditions, including diabetes and heart disease, are at a higher risk of severe illness from contracting COVID-19.[5]

In addition to the health and safety considerations attributable to the spread of COVID-19, Defendant notes the sentencing disparity created by the First Step Act's expansion of eligibility for safety valve relief pursuant to 18 U.S.C. § 3553(f).  Pursuant to the Sentencing Guidelines applicable at the time of Defendant's sentencing, Defendant's single instance of prior documented criminal conducted in 2012 resulted in two criminal history points.  *See* Doc. No. 78 at 11.  Thus, at the time, Defendant was not eligible for relief from the statutory mandatory minimum sentence.  Approximately two

---

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited 12/7/2020).

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited 12/7/2020).

years later, section 402 of the First Step Act changed the "safety valve" to make relief available to people with no more than 4 total criminal history points, no prior 3-point sentences, and no prior 2-point "violent" offense. *See* 18 U.S.C. § 3553(f)(1), as amended by § 402(b), Pub. L. No. 115-391, 132 Stat. 5194, 5221 (2018). Defendant argues, and the Court agrees, that he likely would have been eligible for safety valve relief if he had been sentenced after the passage of the First Step Act.[6] Application of the safety valve, in turn, would likely have resulted in a significantly reduced custodial term.

The Court is mindful that Congress did not make section 402 of the First Step Act retroactive.[7] As such, Congress clearly did not intend to provide expanded relief under section 3582(c) to all defendants serving mandatory minimums with newly qualifying criminal history scores. Nevertheless, as one court has persuasively reasoned:

> Congress indicated thirty-five years ago that it would be appropriate to provide compassionate releases when sentences are "unusually long" but the Bureau of Prisons consistently declined to seek relief in those situations. Congress responded by eliminating the Bureau of Prisons' gatekeeping function over compassionate releases. Accordingly, the fact that the phrase "extraordinary and compelling reason" has not historically been interpreted to include exceedingly long sentences is an unpersuasive reason to exclude such an interpretation today.

*United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *6 (D. Utah Feb. 18, 2020). Moreover, since passage of the First Step Act, courts have taken lengthy sentences into consideration when determining whether compassionate release is appropriate pursuant to section 3582(c)(1)(A). *See, e.g.*, *United States v. Cantu-Rivera*,

---

[6] Although Defendant pleaded guilty to being a felon in possession of a firearm, the firearm was recovered from Defendant's bedroom during the execution of a search warrant. *See Presentence Report* at 6. Accordingly, he did not "possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with" the other offenses and would not have been precluded on this basis from eligibility for safety valve relief. 18 U.S.C. § 3553(f)(2).

[7] The section provides: "APPLICABILITY.—The amendments made by this section [broadening the existing safety valve] shall apply only to a conviction entered on or after the date of enactment of this Act." § 402(b), Pub. L. No. 115-391, 132 Stat. 5194, 5221 (2018).

No. CR H-89-204, 2019 WL 2578272, at *2 (S.D. Tex. June 24, 2019); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *2 (D. Neb. Nov. 14, 2019); *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *8 (M.D. Tenn. Mar. 4, 2020); *accord Maumau*, 2020 WL 806121, at *7.

Ultimately, the Court finds that the substantial change effected by the First Step Act's amendment of section 3553(f), together with the health and safety risks to which Defendant is now exposed due to the spread of COVID-19 and his continued incarceration, constitute extraordinary and compelling reasons in this case for a sentence reduction under section 3582(c)(1)(A).

b) <u>Danger to the Safety of Others</u>

Even if compelling reasons warrant a reduced sentence, the Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) provides:

> Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>  (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Defendant's current offense, while involving a serious drug-related crime, did not involve violence. Moreover, Defendant's criminal history is minimal, as well as non-violent, and the record is devoid of any indication that Defendant might pose a danger to the safety of any other person upon his release. *See* U.S.S.G. § 1B1.13(2). And, importantly, any potential risk to the community will be significantly mitigated by the conditions of Defendant's release, as discussed below, which will include a substantial period of home confinement and participation in a program of drug or alcohol abuse treatment, including drug testing and counseling, as directed by the assigned probation officer.

c) <u>Sentencing Factors</u>

The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Section 3553(a) provides:

> Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) the kinds of sentence[s] and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... [;]

 (5) any pertinent policy statement ... [;]

 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  The Court acknowledges that Defendant's criminal conduct in this case was very serious. Nevertheless, Defendant has served 30 months of the custodial term imposed in this case – a significant period of time by any definition. That period of incarceration, when combined with an additional term of supervised release under restrictive conditions, as discussed below, reflects the seriousness of Defendant's drug offense and will serve to deter future criminal conduct.

  After consideration of all the factors set forth in section 3553(a), the Court finds that those factors weigh in favor of granting Defendant's requested reduction in sentence.

  d) <u>Additional Term of Supervised Release</u>

  Section 3582(c)(1)(A) provides that the Court "may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." The Court finds that an additional term of

supervised release would adequately address the seriousness of Defendant's offense and the need for the original sentence imposed while balancing the extraordinary and compelling circumstances that warrant compassionate release. Accordingly, the Court will impose an additional term of supervised release of sixty (60) months, which approximates the balance of Defendant's original term of imprisonment. Defendant will serve this additional term of supervised release under the condition of home detention. This term of supervised release under home detention will be followed by the previously-imposed five-year period of supervised release.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for early compassionate release and a corresponding reduction in sentence as set forth in the Order and Amended Judgment filed concurrently herewith. The Court **REDUCES** Defendant's custodial sentence to a total term of **time served** and **IMPOSES** an additional sixty (60) months of supervised release for a total term of supervised release of TEN (10) YEARS. All previously imposed terms and conditions of supervised release remain in full force and effect. The Court imposes the following additional special conditions of supervised release:[8]

> 4. Defendant must reside with his mother, Ms. Maria Bertha Cobian-Robles, in accordance with his proposed release plan. In the event such residence is no longer available or otherwise feasible, Defendant must notify his probation officer immediately and thereafter may only reside in a location that is preapproved by Probation and authorized by the Court; and,

---

[8] The Court has the authority to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release," 18 U.S.C. § 3583(e)(2), and finds it appropriate to do so here without a hearing, as the additional term of release is authorized by statute and is one of several restrictive modifications suggested by Defendant as part of his release plan. *See* 18 U.S.C. § 3582(c)(1)(A); Fed. R. Crim. P. 32.1(c)(2).

5. Defendant must remain at his residence at all times for a period of sixty (60) months, except for preapproved and scheduled absences for:

- Employment
- Education
- Religious activities
- Treatment
- Attorney visits
- Court appearances
- Court-ordered obligations or
- Other activities as approved by the probation officer; and,

6. Defendant must be monitored for a period of twelve (12) months, with the location monitoring technology at the discretion of the probation officer. Defendant must abide by all technology requirements and must pay all or part of the costs of participation in the location monitoring program, as directed by the Court and/or the probation officer.

**IT IS SO ORDERED.**

DATE: December 8, 2020

HON. MICHAEL M. ANELLO
United States District Judge